**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 25-88** |
| **LUCINTO FUENTES** | **SECTION: "P" (5)** |

## ORDER AND REASONS

Before the Court is the Government's Emergency Motion and Incorporated Memorandum to Stay Defendant's Release and Set Expedited Briefing Schedule,[1] the Government's Memorandum in Support to Stay Defendant's Release,[2] the Defendant's Preliminary Response to the Government's Ex Parte Stay Motion,[3] and the Defendant's Response in Opposition to the Government's Motion for a Stay.[4] For the reasons that follow, **IT IS ORDERED** that the Government's motion to stay Defendant's release is **DENIED**.

## I.     BACKGROUND

This case has an unusual procedural history. On March 6, 2025, Defendant Lucito Fuentes[5] was named in a criminal complaint for being a felon in possession of a firearm and an illegal alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(5).[6] The complaint alleges that Louisiana State Police troopers were patrolling near a Mardi Gras parade when they observed Mr. Fuentes walking through the crowd gripping what they recognized as the handle of a pistol.[7] The pistol was allegedly partially concealed in Mr. Fuentes's waistband with the

---

[1] R. Doc. 54.
[2] R. Doc. 62.
[3] R. Doc. 57.
[4] R. Doc. 63.
[5] In an unrelated motion filed by the defendant, the defendant informed the Court that the Indictment misspells his first name as "Lucinto," resulting in an erroneous spelling on the docket. The correct spelling of Mr. Fuentes's first name is "Lucito." R. Doc. 39 at 1 n.1.
[6] R. Doc. 1.
[7] *Id.* at 3.

magazine plate visible.[8] After conducting a frisk of Mr. Fuentes and recovering a handgun, a computer inquiry revealed that Mr. Fuentes was convicted in 2023 of simple burglary under Louisiana law—a felony.[9] Another record check revealed that Mr. Fuentes is a Belizean national.[10]

On March 10, 2025, a Pretrial Bail Report was filed.[11] On March 13, 2025, the presiding criminal duty magistrate judge, Chief Magistrate Judge Janis van Meerveld, held a detention hearing.[12] At the March 13 hearing, Mr. Fuentes stipulated to detention, reserving his right to reopen should circumstances permit.[13] Consequently, Mr. Fuentes was remanded to the custody of the United States Marshal.[14]

On April 11, 2025, Mr. Fuentes was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[15] Then, in February 2026, Mr. Fuentes moved to dismiss the April 11 indictment.[16] He also moved to suppress "all evidence discovered through and as a result of law enforcement's unlawful stop, seizure, and questioning in this case."[17]

Soon after, on March 11, 2026, Mr. Fuentes filed a motion to reopen the issue of detention and for an order of release on conditions of bond.[18] In the motion to reopen detention, Mr. Fuentes explained that circumstances had changed substantially since his stipulation of detention.[19] First, Mr. Fuentes was subject to a state probation hold that would have barred his release at the time of the detention stipulation. After the stipulation, however, Mr. Fuentes's original state court attorney

---

[8] *Id.* at 4.
[9] *Id.*
[10] *Id.*
[11] R. Doc. 10.
[12] R. Doc. 15. The detention hearing was originally set for March 10, 2025, but was continued until March 12, 2025, at the request of defense counsel. R. Doc. 12. The March 12 hearing, which lasted 25 minutes, was then continued to March 13. R. Doc. 13.
[13] R. Docs. 15, 16.
[14] R. Doc. 15.
[15] R. Doc. 19.
[16] R. Doc. 39.
[17] R. Doc. 38.
[18] R. Doc. 42.
[19] *Id.* at 2.

filed a motion to vacate Mr. Fuentes's simple burglary conviction because Mr. Fuentes was not advised of his immigration consequences before entering his guilty plea.[20] Mr. Fuentes was then allowed to withdraw that plea and instead pled guilty to the lesser offense of misdemeanor criminal damage to property.[21] The state sentence was fully discharged, and thus Mr. Fuentes was no longer subject to the state probation hold.[22] Second, Mr. Fuentes was also subject to an immigration hold at the time of the detention stipulation.[23] But, between the time of the stipulation and the time of the filing of the motion to reopen detention, the law applicable to the immigration hold had evolved, and Mr. Fuentes's counsel was advised that Mr. Fuentes "now has a pathway to a bond determination."[24]

The Government filed an opposition in response to Mr. Fuentes's motion to reopen detention.[25] Eight days later, a Superseding Indictment was filed.[26] In addition to the felon-in-possession charge, the Superseding Indictment charges Mr. Fuentes with being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8).

On March 27, 2026, Judge van Meerveld held a hearing on Mr. Fuentes's motion to reopen detention.[27] After the 2-hour-and-15-minute hearing, Mr. Fuentes's motion to reopen detention and request for bond were granted.[28] Judge van Meerveld released Mr. Fuentes on a $5,000 unsecured appearance bond and imposed additional conditions on Mr. Fuentes's release, one being a third-party custodian named Jesy Arzu.[29] Three days later, on March 30, 2026, the Government

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 1–2.
[24] *Id.* at 3.
[25] R. Doc. 46.
[26] R. Doc. 48.
[27] R. Doc. 59.
[28] *Id.*
[29] R. Doc. 59-1.

filed its emergency motion to stay Mr. Fuentes's release.[30] That same day, the undersigned stayed Mr. Fuentes's release, and the Court set a telephone status conference for that afternoon to discuss the Government's motion, namely whether the stay should be maintained.[31] In anticipation of the telephone conference, Mr. Fuentes filed a preliminary response to the Government's motion.[32] A minute order followed the conference, setting oral argument on the motion for April 1, 2026.[33] The minute order also provided the parties a further opportunity to brief the Government's motion.[34] Shortly after receiving the parties additional briefing, the Court heard oral argument on the motion.[35]

Meanwhile, when this Court preliminarily stayed Mr. Fuentes's release, Mr. Fuentes was, reportedly, scheduled to be transported to the Central Louisiana ICE Processing Center in Jena, Louisiana.[36] Pursuant to the Court's March 30 order, Mr. Fuentes was transferred back to the custody of the U.S. Marshal.[37]

## II.    DISCUSSION

In the instant motion, the Government requests that the Court stay the pretrial release of Mr. Fuentes pending the Government's appeal of the magistrate judge's order of release to the Court.[38] The motion also requests the Court to set an expedited briefing schedule for the Government's appeal of Mr. Fuentes's release on bond pending trial.[39] The Government's request for expedited briefing was addressed at oral argument and is formally addressed in the conclusion

---

[30] R. Doc. 54. Before filing the emergency motion to stay, the Government asked Judge van Meerveld to stay Mr. Fuentes's release pending appeal of that order to the undersigned. That request was denied. *Id.* at 1.
[31] R. Doc. 55.
[32] R. Doc. 57.
[33] R. Doc. 58.
[34] *Id.*
[35] R. Doc. 65.
[36] R. Doc. 54 at 3.
[37] R. Doc. 55.
[38] *Id.*
[39] R. Doc. 54 at 3.

of this opinion. The gravamen of the Government's motion—its request for a stay—is addressed below. But before addressing the merits of the stay, the Court addresses the question underlying the merits of the stay: whether the Court even has authority to issue a stay here. Although the parties do not dispute the Court's authority to stay the magistrate judge's release order, the Court briefly addresses the issue before turning to the merits of the Government's motion.

### A. Fifth Circuit case law authorizes the district court to stay a release order issued under the Bail Reform Act pending the court's review of that order.

The Bail Reform Act governs whether a criminal defendant should be released or detained pending trial.[40] The BRA mandates a defendant's release unless the person is a flight risk or danger to the community.[41] Even if the presiding judicial officer determines that release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer shall nonetheless impose the least restrictive condition or combination of conditions necessary to assure the person's appearance or safety of the community.[42] In other words, pretrial detention is warranted only where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[43]

When a magistrate judge or other judicial officer orders release of a defendant, the BRA permits an attorney for the Government to file "with the court having original jurisdiction over the offense" a motion revoking the order of release or a motion amending the conditions of release.[44] Put simply, the BRA authorizes the district court to review a magistrate judge's or other non-

---

[40] 18 U.S.C. § 3142. It also governs the release or detention of a criminal defendant pending sentence or appeal. *Id.* § 3143.
[41] *United States v. Baltazar-Sebastian*, 990 F.3d 939, 944 (5th Cir. 2021) (citing 18 U.S.C. § 3142(b)).
[42] 18 U.S.C. § 3142(c).
[43] *Id.* § 3142(e)(1).
[44] *Id.* § 3145(a).

district-judge judicial officer's order of release.[45] Yet the BRA does not expressly authorize the district court to stay that order of release pending the district court's review. "[T]he absence of stay authority" in this situation, however, "could render the district court's power illusory."[46] Thus, the district court has power to stay a release order.[47] Accordingly, this Court was acting within its authority when it entered a stay of Mr. Fuentes's release ordered by the magistrate judge. The next question then is whether the Court should maintain the stay of Mr. Fuentes's release by granting the Government's motion. To answer that question, the Court must first determine the applicable legal standard.

### B. To be granted a stay, the Government must show a likelihood of success on the merits, not a "substantial case."

The applicable legal standard for issuing a stay here is a point of contention. Both parties agree, and it is well established in the case law, that the Government as the party requesting the stay bears the burden of showing that the circumstances justify issuing a stay.[48] But there is some dispute (or at least some non-consensus) regarding the weight of that burden.

The Government draws its  stay standard from *Woodfox v. Cain*, a 2008 unpublished U.S. Court of Appeals for the Fifth Circuit opinion involving a stay of the release of a habeas corpus petitioner.[49] Relying on *Woodfox*, the Government maintains that it must show a likelihood of success on the merits "or can at least 'demonstrate a substantial case on the merits' and [sic] other factors militate against release.'"[50] Under *Woodfox*, the other factors include whether the applicant will be irreparably injured absent a stay, whether the issuance of the stay will substantially injure

---

[45] *United States v. Brigham*, 569 F.3d 220, 229 (5th Cir. 2009).
[46] *Id.* at 230.
[47] *Id.* (collecting cases).
[48] R. Doc. 62 at 4; R. Doc. 63 at 12; *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing two Supreme Court cases).
[49] R. Doc. 62 at 4 (citing *Woodfox v. Cain*, 305 F. App'x 179, 181 (5th Cir. 2008)).
[50] R. Doc. 62 at 4.

the other parties interested in the proceeding, and where the public interest lies, as well as whether the defendant poses a risk to the community.[51]

Mr. Fuentes asserts that *Woodfox* is the incorrect standard here and instead applies the traditional four-factor standard outlined in the U.S. Supreme Court's *Nken v. Holder*:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[52]

Under the *Nken* test, the first two factors are the most critical.[53] Once an applicant satisfies the first two factors, the stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.[54]

Thus, the finer points of contention are (1) whether the Government must make a "strong showing" that it is likely to succeed or may meet the lesser standard of showing only a "substantial case" and (2) the relative weight of the other factors, particularly the irreparable-harm factor. A "movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."[55] As Mr. Fuentes points out, the Government has not pointed to a "serious legal question" in this case.[56] In fact, the Government does not even mention "substantial case" in its analysis. Instead, it

---

[51] *Woodfox*, 305 F. App'x at 181.
[52] R. Doc. 63 (citing *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).
[53] *Nken*, 556 U.S. at 434.
[54] *Id.* at 435. The Court also finds merit in Mr. Fuentes's argument that *Woodfox* and *Nken* both draw their stay standards from *Hilton v. Braunskill* but that, because *Nken* post-dates both *Hilton* and *Woodfox*, it governs. R. Doc. 63 at 18–19.
[55] *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).
[56] R. Doc. 63 at 18–19.

uses "likelihood of success" language and appears to apply *Nken*'s likelihood-of-success standard under the first prong of the analysis.[57]

But even if *Woodfox* were to govern, the Government would have to show that the balance of equities  (*i.e.*, consideration of the other factors) weighs heavily in favor of a stay for the substantial-case standard to apply: "Of course, if the balance of equities . . . is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal."[58] And, as explained below, the other factors do not "heavily tilt" in the Government's favor. Accordingly, to obtain a stay here, the Government must meet the likelihood-of-success standard.

### C. The Government has not shown a likelihood of success on the merits under the Bail Reform Act.

Because the Government is seeking a stay pending its appeal of the magistrate judge's order of release issued pursuant to the Bail Reform Act, the Government must show that it will likely succeed on the merits of its appeal. To put another way, the Government must show that it will likely overcome the presumption of release and meet its burdens under the BRA as to Mr. Fuentes.

"When the district court . . . acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release."[59] "Reviewing a transcript of the detention hearing is an appropriate procedure to comply with that obligation."[60] When drafting this order, however,

---

[57] *See* R. Doc. 62 at 5 ("Whether the Government can show a likelihood of success on the merits requires the Court . . . . Therefore, a stay of a release order is only proper if the Government is able to show a likelihood of success . . . .) (titling first section of analysis as "*Likelihood of Success*").

[58] *Ruiz*, 650 F.2d at 565–66.

[59] *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

[60] *United States v. Faulkner*, No. CRIM. 3:09-CR-249-D2, 2010 WL 1541355, at *1 n.2 (N.D. Tex. Apr. 19, 2010) (citing *United States v. Farguson*, 721 F.Supp. 128, 129 n.1 (N.D. Tex. 1989)).

this Court did not have access to the transcript of Mr. Fuentes's detention hearing before the magistrate judge. Thus, the Court must find a likelihood of success on the merits with the evidence in the record and the undisputed facts before it.

To recall, pretrial release is the default under the BRA.[61] Detention is warranted only when a court finds that no condition or combination of conditions will reasonably assure his appearance as required and the safety of any other person and the community.[62] "[W]ith respect to the "safety of any other person and the community," the [BRA] specifically requires that the 'facts the judicial officers uses to support' this finding 'shall be supported by clear and convincing evidence.'"[63] That is, the Government must prove by clear and convincing evidence that the defendant presents an identified and articulable threat to an individual or the community.[64]

> Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.[65]

That is a high burden.

The BRA, however, is silent on the burden of proof required to demonstrate lack of reasonable assurance for a defendant's appearance.[66] So in making this determination, the Fifth Circuit has applied "the simple preponderance standard."[67] That is, "that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance."[68]

---

[61] *See* 18 U.S.C. § 3142(b).

[62] *Id.* § 3142(e).

[63] *United States v. Good*, No. CR 25-196, 2025 WL 2613628, at *5 (E.D. La. Sept. 10, 2025) (Fallon, J.) (citing 18 U.S.C. § 3142(f)) (internal citation omitted).

[64] *See United States v. Salerno*, 481 U.S. 739, 751 (1987).

[65] *United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (citations omitted) (cleaned up).

[66] *Good*, 2025 WL 2613628, at *5.

[67] *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

[68] *Id.* (citations omitted).

Here, the Government seeks a stay of Mr. Fuentes's release on both grounds—that Mr. Fuentes presents a risk of flight and that he poses a danger to the community.[69]

When determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the BRA provides factors the court must consider, including (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community posed by the person's release.[70] The Court will address each factor in turn.

### 1.  Nature and Circumstances of the Offense Charged

The Superseding Indictment charges Mr. Fuentes with being a felon in possession of a firearm and being an alien in possession of a firearm based on the same offense. The nature and circumstances of that offense are described in the affidavit attached to the complaint and are described above.[71] Although the offense involved a firearm, and there is always some inherent danger in carrying a loaded firearm in a crowd, courts in other circuits have found that being a felon in possession of a firearm is not a crime of violence under the BRA[72] and have noted that "ex-felons have the same motives as lawful possessors to possess a firearm . . . ."[73]

---

[69] R. Doc. 62 at 5.

[70] 18 U.S.C. § 3142(g).

[71] R. Doc. 1.

[72] *See, e.g.*, *United States v. Lane*, 252 F.3d 905, 906–08 (7th Cir. 2001); *United States v. Ingle*, 454 F.3d 1082, 1086 (10th Cir. 2006); *United States v. Singleton*, 182 F.3d 7, 17 (D.C. Cir. 1999). *But see United States v. Dillard*, 214 F.3d 88, 104 (2d Cir. 2000) (finding illegal possession of a firearm by a previously convicted felon to be a crime of violence). If felon-in-possession is not treated as a crime of violence, the same reasoning applies with equal force to alien-in-possession. Both are possession offenses that are defined by the defendant's prohibited status, and alien status is no more inherently associated with dangerousness than felon status.

[73] *Lane*, 252 F.3d at 906.

Specifically, Mr. Fuentes's conduct throughout the offense was not violent nor posed a danger to any person involved.[74] For instance, there is no evidence that he brandished the firearm or threatened someone with it. While he was gripping the handle of the firearm, it appears that it remained tucked in the waistband of his pants until the state troopers obtained it in the stop-and-frisk. And Mr. Fuentes's conduct does not indicate that he is a flight risk. The complaint provides no indication that he resisted the state troopers or tried to flee from them.

In its memorandum, the Government contends that Mr. Fuentes initially lied to the state troopers about his name and why he was holding the firearm.[75] Not only did these facts not make their way into the complaint, but the initial verbal "lies," alone, do not actually demonstrate that Mr. Fuentes poses a danger to the community or is a flight risk.[76] In short, while the offense charged is serious, the underlying facts and circumstances do not support a finding that Mr. Fuentes is a danger to the community, nor do they support a finding that Mr. Fuentes is a flight risk.

### 2.  Weight of the Evidence

The weight of the evidence against the defendant is the least important factor in the detention determination.[77] And, here, it likely tips slightly against release. The facts in the affidavit attached to the complaint, if true, are damning and strongly support a finding that Mr. Fuentes

---

[74] *Cf. United States v. Good*, No. CR 25-196, 2025 WL 2613628, at *6 (E.D. La. Sept. 10, 2025) (finding that nature and circumstances of offense charged weighed in favor of detention where defendant was charged with a crime of violence for assault on a federal officer and faced enhanced penalty because he allegedly inflicted bodily injury on the officer); *United States v. Jubert*, No. 1:23-CR-104-TBM, 2023 WL 5831098, at *3 (S.D. Miss. Sept. 7, 2023) (finding that the nature and circumstances of offense charged supported that Government was likely to be successful in showing that the defendant posed a danger to a prospective witness where the offense charged involved threats on social media with the intent to kill, injure, harass, intimidate another person); *United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 496 (W.D. Tex. 2022) (finding that defendant accused of dealing firearms without a license and conspiring to smuggle weapons from United States to Mexico show that Government would likely succeed in showing that defendant creates a danger to the community); *United States v. Kent*, 496 F. Supp. 3d 500, 506 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding defendant with loaded firearm on his person while apparently under the influence of a controlled substance posed danger to community).

[75] R. Doc. 62 at 6–7.

[76] Additionally, Mr. Fuentes asserts that although his legal name is Lucito Fuentes, "he has always gone by Jay Arzu," the name he allegedly told the state troopers. R. Doc. 63 at 4.

[77] *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex.), *aff'd,* 341 F. App'x 979 (5th Cir. 2009).

committed the charged offenses.[78] But notably, Mr. Fuentes has filed a motion to suppress, which, if granted, would appear to suppress nearly all, if not all, the evidence the Government has against Mr. Fuentes in this case.[79] He has also filed a motion to dismiss the indictment.[80] And as explained under the first factor, the facts underlying the evidence do not, standing alone, demonstrate that Mr. Fuentes  is a flight risk or poses a danger to the community.

### 3.   History and Characteristics of the Person

The third factor requires the court to consider the history and characteristics of the defendant, including his character; physical and mental condition; family ties; employment; financial resources; length of residence in the community; community ties; past conduct; history relating to drug or alcohol abuse; criminal history; record concerning appearance at court proceedings; and whether at the time of the current offense, the defendant was on probation for an offense under federal, state, or local law.[81] This factor complicates the detention analysis and cuts both ways.

Preliminarily, Mr. Fuentes was placed in ICE custody immediately after his release from the custody of the U.S. Marshal,[82] and it is this Court's understanding that ICE will again immediately place Mr. Fuentes in ICE custody if the Court lifts the stay. But the Fifth Circuit recently held that the existence of an ICE detainer and threat of potential removal, alone, are not sufficient to deny BRA release.[83] That is, even in a case like this one where the defendant would go from the U.S. Marshal's custody into ICE custody and thus as a practical matter cannot flee,

---

[78] "To be clear, the Court only conducts this analysis to evaluate whether the Government carried its burden to show that Defendant presents a risk of flight and/or a danger to the community that cannot be remedied by any condition or set of conditions—not to impose preverdict incarceration." *Good*, 2025 WL 2613628, at *6.

[79] R. Doc. 38.

[80] R. Doc. 39.

[81] 18 U.S.C. § 3142(g)(3).

[82] R. Doc. 54 at 3.

[83] *United States v. Esquivel-Bataz*, 155 F.4th 491, 493 (5th Cir. 2025) (citing *United States v. Soriano Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019)).

the Court must conduct an individualized evaluation of Mr. Fuentes under the BRA factors and find him to be a flight risk.[84] Accordingly, pursuant to the Fifth Circuit's instruction, the Court proceeds by addressing Mr. Fuentes's history and characteristics, many of which are in dispute.

First, a defendant's ties to the community and the locality, including family ties, are especially pertinent in determining whether the defendant poses a serious flight risk.[85] Both parties agree that Mr. Fuentes came to the United States from his home country of Belize when he was 15 and that he was granted deferred removal proceedings.[86] But their agreement as to Mr. Fuentes's immigration status and ties to the U.S. largely ends there. The Government asserts that Mr. Fuentes does not have any status to remain in the U.S.,[87] while Mr. Fuentes argues that he has been granted "Special Immigration Juvenile Status."[88] The Government also claims that Mr. Fuentes "has strong ties to Belize."[89] Mr. Fuentes, however, portrays his life in Belize as rife with trauma,[90] and although he agrees that his deferred deportation has been revoked, he claims he was working toward permanent residency at the time of his arrest in this case.[91] Even if Mr. Fuentes is not immediately detained by ICE upon his release from the custody of the U.S. Marshal, his allegations about his childhood and life in Belize raise substantial questions regarding his ties there.

Mr. Fuentes claims strong ties to his third-party custodian and alleged de facto mother, Jesy Arzu, whom the Government concedes is a legal permanent resident of the United States.[92]

---

[84] *Esquivel-Bataz*, 155 F.4th at 493.
[85] *See United States v. Rueben*, 974 F.2d 580, 586–87 (5th Cir. 1992).
[86] R. Doc. 62 at 5; R. Doc. 63 at 3, 5.
[87] R. Doc. 62 at 5.
[88] R. Doc. 63 at 5. This Court is not familiar with Special Immigrant Juvenile Status and what it means for Mr. Fuentes's immigration status. The parties have failed to fully address this issue, but there appears to be more nuance to Mr. Fuentes's immigration status, if what alleged is true, than what the Government portrays. *See Special Immigrant Juveniles*, U.S. CITIZENSHIP AND IMMIGR. SERV., https://www.uscis.gov/working-in-US/eb4/SIJ (last visited Apr. 8, 2026) (explaining that an SIJ classification may qualify the immigrant for lawful permanent residency).
[89] R. Doc. 62 at 6.
[90] R. Doc. 63 at 3–6.
[91] *Id.*
[92] R. Doc. 54 at 2.

If Mr. Fuentes is as close to Ms. Arzu as he claims to be, that is, that she is in fact like a mother to him, then his ties to the U.S. would appear to be stronger than his ties to Belize, where he claims he practically has no family. Moreso, Ms. Arzu appears to likely be a reliable third-party custodian. By the Government's own admission, she requested the state court to revoke Mr. Fuentes's state bond, claiming Mr. Fuentes was "on drugs."[93] And Mr. Fuentes alleges that she attended many of the state court dates he missed and asked the court to force him to attend school.[94] The Court has some concern, however, regarding her availability as a third-party custodian because of her work schedule.[95]

The parties disagree over Ms. Arzu's continued status as Mr. Fuentes's third-party custodian. The Government asserts that it learned during the detention hearing that Ms. Arzu may be a government witness, rendering it "impossible" for Ms. Arzu to be Mr. Fuentes's third-party custodian.[96] Mr. Fuentes, however, maintains that there are other conditions that can mitigate the problem posed by Ms. Arzu's being a government witness, such as prohibiting discussion of the case or substituting the third-party custodian condition for GPS monitoring.[97]

Second, the Court considers Mr. Fuentes's past conduct, particularly his criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense, he was on probation for another offense. The Government asserts, and Mr. Fuentes concedes, that he missed several court dates.[98] Though, Mr. Fuentes blames his mental health on the missed

---

[93] R. Doc. 62 at 3.
[94] R. Doc. 63 at 7.
[95] R. Doc. 62 at 4 ("Arzu works five days a week as a bartender at night and testified at the detention hearing that her neighbors would assist her in supervising the defendant when she was not at home. One of those neighbors is heard on recorded jail calls telling the defendant . . . he would have purchased a firearm for the defendant if the defendant did not do so himself.").
[96] R. Doc. 62 at 7–8.
[97] R. Doc. 63 at 23. The parties even disagree about the U.S. Probation Officer's recommendation regarding Ms. Arzu being a government witness. *Compare* R. Doc. 62 at 8 *with* R. Doc. 63 at 23.
[98] R. Doc. 62 at 6; R. Doc. 63 at 20–21.

hearings and alleges that "he since has been treated and is doing well."[99] The Government also asserts that Mr. Fuentes was on probation for the state offense when he committed the instant offense, that he failed multiple drug tests while on probation, that he placed phone calls while in jail indicating he would obtain another firearm once released, and that he was involved in a domestic disturbance with Ms. Arzu.[100] Mr. Fuentes does not dispute these allegations, and, to be sure, these allegations cut sharply against release.[101] But Mr. Fuentes challenges the Government's allegation that he gave his probation officer an incorrect address multiple times.[102] Mr. Fuentes contends the inaccuracies were due to paperwork errors and not an attempt to mislead the probation officer.[103]

The facts surrounding Mr. Fuentes's criminal history are interesting. Besides the state offense for simple burglary, Mr. Fuentes has no prior criminal convictions.[104] And as explained above, the simple burglary conviction was vacated by the state court after Mr. Fuentes withdrew his guilty plea because he was not advised of the immigration consequences of his plea.[105] Mr. Fuentes instead pled guilty to a misdemeanor, so, currently, his only prior conviction is a misdemeanor.

Given the number of factual disputes and the extent to which many of the established facts cut in more than one direction, especially regarding one of his familial and local ties and condition of his release—Ms. Arzu—Mr. Fuentes's history and characteristics, at this interim stage, do not weigh definitively in either direction as to whether he is a flight risk or a danger to the community.

---

[99] R. Doc. 63 at 21.
[100] R. Doc. 62 at 6.
[101] *See United States v. Flores*, 53 F.4th 313, 316 (5th Cir. 2022) (finding that district court did not abuse its discretion in concluding that defendant presented a flight risk when, along with drug offense charge and prior evasion of arrest, he had violated probation conditions in the past).
[102] R. Doc. 62 at 6.
[103] R. Doc. 63 at 21 n.8.
[104] *Id.* at 6.
[105] *Id.* at 6–7.

### 4.  Nature and Seriousness of Danger Posed by Person's Release

The fourth factor commands the Court to consider the "nature and seriousness of the danger to any person or the community that would be posed by the person's release."[106] Under this section, courts may contemplate the effectiveness of any bonds set, including considering whether the bond will reasonably assure the defendant's appearance.[107] Mr. Fuentes is currently released on a $5,000 unsecured bond. But, at this interim stage, the Court does not have sufficient information regarding Mr. Fuentes's financial status to determine whether the bond is merely illusory.[108]

But what is more telling is Mr. Fuentes's lack of violent history. His limited criminal history is nonviolent, and besides the Government's domestic disturbance allegation regarding Ms. Arzu, the record, at this stage, does not reveal any history of violence by Mr. Fuentes. The Government makes much of the fact that Mr. Fuentes indicated on a jail call that he would attempt to "find another firearm to replace the one that officers seized."[109] To be clear, the fact that Mr. Fuentes was allegedly recorded stating he intended to obtain a firearm after being arrested for possessing one is certainly relevant. But at the same time, it does not show that he would threaten anyone with a firearm, brandish a firearm, carry a firearm in connection with another crime, plan violence, or even use a firearm. And there is little to no evidence from his past to infer that he would do any of those actions. Thus, this factor likely weighs in favor of release.

### 5.  Weighing the Bail Reform Act Factors

In sum, at least two of the four factors likely weigh in favor of release, and one factor does not tip decidedly in either direction. Although the Court has some concerns regarding the capacity

---

[106] 18 U.S.C. § 3142(g)(4).
[107] *Id.*
[108] *See United States v. Good*, No. CR 25-196, 2025 WL 2613628, at *8 (E.D. La. Sept. 10, 2025) (finding $50,000 bond to be illusory where defendant was foreign national with no ties to the United States and had no money or property within the court's reachable powers).
[109] R. Doc. 62 at 8.

and availability of Ms. Arzu as Mr. Fuentes's third-party custodian and Mr. Fuentes's behavior while on probation for his state offense, many of those facts and the context surrounding them are in dispute. The Court must also consider—and Mr. Fuentes argues—that there are conditions, such as location monitoring, that could mitigate these concerns. Accordingly, at this stage, the Court finds that the Government is unlikely to succeed in establishing that it is more likely than not that no condition or combination of conditions could reasonably assure Mr. Fuentes's appearance at future court proceedings and that by clear and convincing evidence that no conditions will reasonably assure the safety of others. Thus, where pretrial detention is the "carefully limited exception" and not the norm, the Court finds that the Government is unlikely to succeed in establishing success on the merits of its appeal of Mr. Fuentes's release order.[110]

### D. The Government's argument that it will be irreparably harmed by the defendant's deportation is not persuasive.

The second factor under the four-factor stay standard requires the party seeking the stay to show that it will be irreparably injured absent a stay.[111] "[S]imply showing some 'possibility of irreparable injury' fails to satisfy the second factor."[112] The Government asserts that it would be irreparably harmed if Mr. Fuentes were to flee or otherwise be removed to Belize.[113] Having already found that, at this stage, the Government is unlikely to prove by a preponderance of the evidence that Mr. Fuentes is a flight risk, the remaining alleged irreparable injury is Mr. Fuentes's removal or deportation by ICE. Mr. Fuentes argues that the Government's alleged irreparable harm of removal is self-inflicted.[114]

---

[110] *United States v. Salerno*, 481 U.S. 739, 755 (1987).
[111] *Nken v. Holder*, 556 U.S. 418, 426 (2009).
[112] *Id.* at 434–35.
[113] R. Doc. 62 at 8.
[114] R. Doc. 63 at 26.

The Court recognizes the merit in both arguments. "[T]he Court is mindful of the Catch-22 created when one Executive Branch's decision, *i.e.* the Department of Homeland Security's decision to issue an ICE detainer, factors into a favorable decision for another arm of the Executive Branch, *i.e.* the Department of Justice's ability to secure its requested pretrial detention."[115] After all, "[i]t is the Executive Branch's decision that places the Government in this predicament."[116] But Mr. Fuentes's argument that the Government's potential irreparable harm is self-inflicted ignores the practical reality of the situation.

Because, at the same time, there is "the very real experience of seeing a defendant released, ICE immediately deporting the defendant, the defendant trying to come to the United States so he can appear in court, and the United States Attorney's Office not being able to do anything about the situation."[117] Thus, removal or deportation by ICE would certainly frustrate or effectively moot the U.S. Attorney's ability to secure Mr. Fuentes's appearance for future criminal proceedings.

But even if the Court accepts the Government's ICE-removal-equals-irreparable-harm argument, it has been provided with only speculation regarding the timeline of Mr. Fuentes's removal or whether he will even be removed. The Government's memorandum states that Mr. Fuentes "will remain in immigration custody if he is to be released . . . as he is processed through his pending removal proceedings."[118] But counsel for both parties have indicated that they do not know how long those removal proceedings may last (*i.e.*, days, weeks, or months). The hearing on the Government's appeal is about one week away, and trial in this case is currently a little over a month away.[119]  So, while there is a possibility Mr. Fuentes will be removed in the week leading

---

[115] *United States v. Good*, No. CR 25-196, 2025 WL 2613628, at *7 (E.D. La. Sept. 10, 2025).

[116] *United States v. Abrego*, 788 F. Supp. 3d 937, 948 (M.D. Tenn. 2025).

[117] *United States v. Vencomo-Reyes*, No. CR 11-2563 JB, 2011 WL 6013546, at *11 (D.N.M. Nov. 28, 2011); *see also United States v. Baltazar-Sebastian*, 990 F.3d 939, 945 (5th Cir. 2021) (agreeing with six other circuits that pretrial release under the BRA does not preclude pre-removal detention under the Immigration and Nationality Act).

[118] R. Doc. 62 at 8.

[119] R. Doc. 68.

up to the appeal or in the month before trial, there is also a possibility that Mr. Fuentes's release will be revoked on appeal and that he again will be in the U.S. Marshal's custody—in as short as one week. Also, the record suggests that removal may not be as immediate or inevitable as the Government implies. In his motion to reopen detention, Mr. Fuentes indicated that he has a potential avenue to seek a bond determination with respect to his immigration hold, which may introduce additional proceedings that bear on the timing on any removal.[120] This is coupled with the issue of his Special Immigrant Juvenile Status and what this means for Mr. Fuentes's status as an immigrant and deportation. Thus, it cannot be said that the Government *will be* irreparably injured if the Court does not stay the magistrate judge's release order. Instead, the harm—removal by ICE—is more of a possibility in the current timeframe, rather than an imminent injury.[121]

The Government stresses that Mr. Fuentes will be detained by ICE at an ICE processing center in Jena, Louisiana, which is nearly four hours away. But counsel for Mr. Fuentes, whose office has had clients in ICE custody in the past, stated that, even if in Jena, the Government is required to bring Mr. Fuentes to court proceedings while in their custody. It also bears recalling that Fifth Circuit precedent precludes a district court from finding possible deportation, alone, justifies detention under the BRA.[122] Although that rule applies in the BRA context, it only further cuts against finding possible ICE removal to be a standalone irreparable harm. Accordingly, the Court finds that this factor weighs against granting a stay of the magistrate judge's release order.

### E.  The remaining factors do not tip the balance toward a stay.

Although the Government failed to show that the first two factors support the issuance of a stay, the Court briefly considers the third and fourth factors out of an abundance of caution. As

---

[120] R. Doc. 42 at 3.

[121] *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he 'possibility standard is too lenient.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

[122] *United States v. Esquivel-Bataz*, 155 F.4th 491, 493 (5th Cir. 2025).

to the third factor, the Government argues that staying the magistrate judge's order will not "prejudice the defendant that would overcome the other factors present here," because he likely will not be released from immigration custody even if he is released from detention in this case.[123] As to the fourth factor, the Government asserts that a stay would serve the public's interest "in reducing potential danger to the community."[124] As Mr. Fuentes points out, however, the Government's arguments in support of each factor contradict one other: the Government argues that a stay is necessary because Mr. Fuentes poses a danger to the community but also claims that Mr. Fuentes will not be harmed by the stay because he will be detained by ICE anyway. Mr. Fuentes cannot be a danger to the community if he is detained.

Separately, though, while the public has a legitimate interest in reducing danger to the community, the Court has found, under the first stay factor, that detention is not warranted on that basis. Also, Mr. Fuentes has a "strong interest in liberty,"[125] and the public has an interest in this Court properly adhering to the requirements of the BRA.[126] Accordingly, neither of these factors tip the balance in favor of a stay.

## III.    CONCLUSION

For the foregoing reasons, the Government's Emergency Motion and Incorporated Memorandum to Stay Defendant's Release and Set Expedited Briefing Schedule (R. Doc. 54) is **DENIED IN PART and GRANTED IN PART**.

**IT IS ORDERED** that the Government's motion to stay the magistrate judge's release of the defendant, Lucito Fuentes, pending the Government's appeal of said order to this Court is

---

[123] R. Doc. 62 at 8.
[124] *Id.*
[125] *United States v. Salerno*, 481 U.S. 739, 750 (1987).
[126] *United States v. Abrego*, 788 F. Supp. 3d 937, 949 (M.D. Tenn. 2025).

**DENIED**. The defendant, Lucito Fuentes, shall be released from the custody of the U.S. Marshal pursuant to Judge van Meerveld's order of release.

**IT IS FURTHER ORDERED** that the Government's request for an expedited briefing schedule to appeal the magistrate judge's order of release is **GRANTED**. The Government's brief must be filed **on or before April 9, 2026**. The Government's brief must include notice of the evidence it intends to introduce at the hearing. Defendant's brief must be filed **on or before April 13, 2026**. The Government's reply, if any, must be filed **on or before 5:00 p.m. on April 14, 2026**. The Court will hold a *de novo* hearing on the appeal on **April 15, 2026, at 9:30 a.m.** in Courtroom C551, 500 Poydras Street, New Orleans, Louisiana.[127]

New Orleans, Louisiana, this 8th day of April 2026.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[127] Most of these dates were the same dates provided to counsel during the oral argument on the instant motion.